UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTINA BUTCHER,**

      **Plaintiff,**

v.                                                  Case No. 8:17-cv-384-T-30TBM

**NANCY A. BERRYHILL, Acting
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Social Security disability benefits and Supplemental Security Income ("SSI") payments. Upon review of the record and the pleadings and memoranda submitted by the parties, and for the reasons set out herein, I recommend the decision of the Commissioner be **affirmed.**

**I.**

Plaintiff applied for disability benefits and SSI in June 2013, alleging disability as of April 1, 2010, by reason of cavernous hemangioma removed, seizures, dizziness, depression, anxiety, brain damage, impaired speech, numbness in extremities and lips, extreme headaches,

inability to read or write for prolonged periods, and difficulty understanding conversations.[1] (R. 286). Plaintiff's applications were denied originally and on reconsideration.

An Administrative Law Judge ("ALJ") conducted a *de novo* hearing on July 8, 2015. (R. 47–88). Plaintiff was thirty years old at the time and had a high school education. She last worked in 2010 as a pharmacy tech. She testified that she left that work to care for her children and because she was having trouble handling stress. She underwent a hemangioma to the left temporal lobe in 2013. She said she suffers auras daily and occasional seizures, including grand mal seizures. She testified she no longer drives and is fearful of leaving the house for fear she will have a seizure. She complained of dizziness, trouble lifting her two year old, and difficulty doing household chores, concentrating, and with her memory. She claimed she is anxious and fearful. (*See* R. 51–80)

The ALJ also took testimony from Cynthia Stephens, a vocational expert ("VE"). The VE identified Plaintiff's former job as a pharmacy tech, as well as the jobs of cashier, information clerk, and office helper, as available to persons capable of light exertional work with a number of postural and environmental restrictions. (*See* R. 80–87).

Also before the ALJ were medical records outlining Plaintiff's medical history. These matters are addressed herein as necessary.

By decision dated August 12, 2015, the ALJ determined that while Plaintiff has severe impairments related to seizure disorder and status-post hemangioma removal from the left lower side of the brain, she nonetheless had the residual functional capacity ("RFC") to perform a

---

[1] At the administrative hearing, the alleged onset date was amended to February 12, 2013. (R. 78).

2

limited range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a pharmacy tech, as well as perform other jobs available to her in the local and national economy. On this conclusion, Plaintiff was determined to be not disabled. (R. 30–41).

The Appeals Council denied Plaintiff's request for review (R. 1–7), and the ALJ's decision became the final decision of the Commissioner.

## II.

Entitlement to Social Security disability benefits and SSI payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the listing of impairments; (4) if not, whether the claimant has the RFC to perform his past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant

numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42

U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff raises three claims on this appeal. As stated by Plaintiff, they are:

> (1) The Plaintiff treated with a neurologist, Dr. Diaz. Dr. Diaz completed two medical source statements. Either one of them set forth enough limitations as to presume disability. The ALJ gave little weight to those opinions. There was no substantial evidence to support that finding.
>
> (2) Ms. Butcher treated with Dr. Dawn Suksanong, PsyD, a psychologist, who diagnosed the Plaintiff with adjustment disorder with mixed anxiety and depressed mood. Dr. Diaz, the neurologist, diagnosed Ms. Butcher with adjustment disorder with mixed anxiety and depressed mood. The ALJ did not find that Ms. Butcher suffered from any psychological severe impairments nor did he include any psychological limitations in the RFC. The RFC is not supported by substantial evidence because it does not include any psychological limitations.
>
> (3) Plaintiff submitted records of Dr. Diaz after the hearing but before the decision. However, the ALJ did not review those notes nor did he list them in the exhibit list at the end of the decision. The ALJ is required to review all evidence submitted in the failure to do so renders the decision not supported by substantial evidence.

(Doc. 18 at 14).

### A.

By her first claim, Plaintiff cites two RFC questionnaires completed by treating neurologist Christina Diaz, M.D. (*see* R. 519–23; 558–61), both of which reflect opinions or limitations caused by Plaintiff's seizure disorder that effectively render her disabled from any work. She complains the ALJ improperly gave the opinions little weight based on reasoning unsupported by the record. She argues the ALJ's reasoning that the opinions were conclusory

5

without reference to objective clinical testing or lab results is a misstatement of fact because the doctor gave details about Plaintiff's symptoms, pain, clinical findings, and objective signs and the treatment and Plaintiff's response. Plaintiff submits the ALJ's findings that the opinions were internally inconsistent with the doctor's clinical findings and that the doctor's limitations for weakness and sitting were too severe are also incorrect given the findings for seizures, mild left frontotemporal slowing, and history of left temporal cavernous hemangioma. Moreover, she argues the ALJ failed to identify the clinical findings that were inconsistent. She claims the treating doctor's opinion should have been afforded great weight and the decision should be reversed with an award of benefits.

   The Commissioner responds that the ALJ properly considered the medical record, evaluated the opinions of Dr. Diaz, and stated good cause for rejecting the opinion evidence. She argues the opinions were set forth in conclusory checked boxes without reference to lab reports or objective clinical findings. While the doctor preliminarily highlighted some clinical findings, she notes the doctor did not explain how specific limitations were related to specific findings. As a result, she contends the findings of seizures, mild left frontotemporal slowing, and left temporal cavernous hemangioma were mere diagnoses and do not explain the need for specific functional limitations. As for the ALJ's reasoning that the doctor's opinions were inconsistent with her clinical findings, which essentially showed intact presentations, the Commissioner argues the ALJ correctly noted that the record as a whole shows Plaintiff's impairments did not impair her functioning. Rather, in office visits she routinely demonstrated normal power in all extremities, normal sensation, normal cranial nerve function, intact reflexes and normal gait. She

argues these findings belie the severe limitations opined and suggest the doctor relied heavily on Plaintiff's subjective complaints.

"Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Id.* In this Circuit, considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Id.* at 1178 (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997)). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Id.* at 1179 (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004)).

While I am not unsympathetic to Plaintiff's circumstances, after a close reading of the whole of this record, in particular the records from Dr. Diaz and her office, I conclude that the ALJ states adequate good cause to discount the doctor's opinions. The record reflects Plaintiff suffered a seizure disorder but otherwise remained in good health with good physical and mental functionality. Upon a fair reading, the ALJ could correctly find that the October 2013 opinions (R. 518–23) made in reference to Plaintiff's residual strength capacity for lifting and carrying,

sitting, standing and walking, and manipulating are conclusory[2] and lacking in any record basis or explanation apart from Plaintiff's subjective claims made in numerous phone calls to Dr. Diaz's office. Significantly, Plaintiff fails to show from the medical record conditions which otherwise support these physical limitations. And, the seizure RFC questionnaire (R. 557–61) does not dictate a conclusion that Plaintiff was incapable of the physical and mental requirements for all work. While it clearly suggests that seizure activity occurring during the workday would be disruptive to the workplace, it does not reveal limitations that would prevent all work.

In terms of both Plaintiff's mental and physical capacity, the level of impairment suggested by both questionnaires may correctly be read as inconsistent with the doctor's clinical observations and findings. In notes from each of Plaintiff's office visits with Dr. Diaz, which were subsequent to the surgical procedure to remove the hemangioma, the findings on mental status exams, cranial nerve exams, motor exams, sensory exams, and gait reflected normal functioning and signs of recovery. (*See* R. 457, 461–62, and 582–83). These observations, on actual examination, lend substantial credence to the ALJ's conclusion that the severe limitations by Dr. Diaz are more attributable to Plaintiff's subjective claims than her documented medical condition.[3] Moreover, as observed by the ALJ, there are no objective clinical tests or lab reports

---

[2]I think Plaintiff correct that the forms are not entirely conclusory; both set forth diagnoses and symptoms. However, the physical functional limitations do appear conclusory, not otherwise supported on the form or on review of Dr. Diaz's records.

[3]As Plaintiff documents, she made many phone calls to this doctor's office with numerous questions and subjective complaints. I think it a fair reading that while Dr. Diaz did not field these calls, she was aware of them and was influenced by Plaintiff's subjective complaints in completing the questionnaires. As the Commissioner urges, such subjective claims alone, unsupported by medical signs and findings, do not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Significantly, Plaintiff does not challenge on this appeal the ALJ's credibility findings discounting the subjective complaints as overstated.

cited in support of the limitations. And, upon my review, test results (such as EEG tests) reflected at most mild abnormality or entirely normal results. When results showed left frontal/temporal slowing, there was no evidence of seizure activity. The clinical and objective record together with the credible evidence of Plaintiff's daily activities may be read as supporting that she was not as impaired as these opinions would suggest.

Under the applicable standard, even the opinions of a treating doctor may be discounted on a showing of good cause. Good cause can be demonstrated where the opinion evidence is inconsistent with the doctor's own records or unsupported by the record as a whole. In this matter, I am obliged to find the ALJ has stated good cause to discount the doctor's opinions.

**B.**

By her second claim, Plaintiff complains the ALJ failed to find she suffered a severe mental impairment despite the diagnoses by Drs. Suksanong and Diaz of adjustment disorder with mixed anxiety and depressed mood. Moreover, she claims the ALJ failed to impose any psychological limitations in his RFC assessment despite her complaints of depression, anxiety, confusion, and fatigue. She argues the failure to include mental limitations in the RFC was not harmless because such would have likely limited Plaintiff to simple, repetitive work and precluded her from the pharmacy tech job, which was semi-skilled work.

In response, the Commissioner argues Plaintiff fails to demonstrate from the medical evidence that her mental limitations caused significant work-related limitations. She points out that the decision reflects the ALJ's citation to a number of record-based findings to support his conclusion and also reflects the ALJ's consideration of the mental impairments in his discussion

9

of the RFC. The Commissioner submits Plaintiff fails to prove mental functional limitations beyond those included in the RFC finding.

At step two of the five-step evaluation process prescribed by the Regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.[4] 20 C.F.R. §§ 404.1521(a); 416.921(a). Thus, the severity of a medically ascertained impairment is measured in terms of its effect upon a claimant's ability to work and not simply in terms of "a deviation from purely medical standards of bodily perfection or normality." *Wind v. Barnhart,* 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

In assessing the severity of Plaintiff's mental impairments, the ALJ considered her administrative filings, subjective claims, and treatment records, including those from psychologist Suksanong, and concluded that Plaintiff suffered only mild limitations in her capacity for performing daily activities, social functioning, and in the area of concentration, persistence, or pace, and had no periods of decompensation. On these findings, the ALJ

---

[4]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

10

determined her mental impairments were nonsevere causing no more than minimal limitations in her ability to engage in basic work activities. (R. 33–34).

The ALJ's conclusion of a nonsevere mental impairment is bolstered by his review of the pertinent records, including the mental status and other neurological findings by Dr. Diaz, the findings and opinions of the nonexamining psychologists, and the reports and opinions of Dr. Suksanong, to which the ALJ gave great weight. Once again, after a thorough review of this medical record, I am obliged to find the ALJ's conclusion supported by substantial evidence.

Basic work activities pertinent here include the capacities for speaking; understanding, remembering, and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. Despite urging to the contrary, Plaintiff does not demonstrate significant limitations in these basic activities of mental functioning by reference to the medical record. Instead, she relies upon her diagnoses and her subjective complaints. But, as noted above, subjective claims alone, unsupported by medical signs and findings do not establish functional limitations and the severity of a medically ascertained impairment is measured in terms of its effect upon a claimant's ability to work and not simply in terms of a deviation from purely medical standards of bodily perfection or normality. A review of the pertinent medical evidence, in particular that from Drs. Diaz and Suksanong, reveals no significant limitations in her mental functioning that were overlooked by the ALJ. (*See* R. 457, 461, 563, and 567).

11

Plaintiff fails to demonstrate error at step two.[5] More significantly, she fails to identify a particular mental limitation, supported by the medical evidence, which should have been included in the mental RFC.[6] To the extent Plaintiff relies on her subjective complaints in this regard, it merits noting again that such complaints, absent medical support, do not establish disability. And, in any event, the ALJ discounted Plaintiff's subjective claims as overstated. (R. 39). Plaintiff does not challenge the ALJ's credibility finding or his conclusion that her activities of daily living, the objective medical evidence, and the medical treatment records all suggest greater sustained capacity than as claimed by Plaintiff. As such, Plaintiff is not entitled to relief on her second claim.

## C.

By her third claim, Plaintiff argues the ALJ erred by failing to review the additional records from Dr. Diaz submitted to the ALJ prior to decision. These records (R. 579–620) reflect numerous phone calls and subjective complaints by Plaintiff to Dr. Diaz's office between September 2014 and May 2015, which she asserts should have been considered.

---

[5] "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). "Even if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment: and that finding is all that step two requires." *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824–25 (11th Cir. 2010). Here, there is simply no step two error given the finding of other severe impairments.

[6] Her argument that claims of fatigue, confusion, "and the like" made in phone calls to Dr. Diaz's office show a severe mental limitation simply are not demonstrated in the clinical observations and findings noted above made by Dr. Diaz or Dr. Suksanong.

12

The Commissioner disagrees that the records were not considered by the ALJ, but even if the records were not considered by the ALJ, they were considered by the Appeals Council, which concluded they provided no basis for changing the administrative result. Moreover, she argues these records were similar to and largely repetitive to those records of numerous calls to the doctor's office in the record clearly reviewed by the ALJ. She argues the one new note from an office visit with Dr. Diaz made the same or similar findings that Plaintiff was alert, attentive, and oriented; her speech was clear and fluent; her memory was grossly intact; her nerve, motor, and sensory exams were normal, as was her May 2015 EEG. These normal findings echo the findings made by the ALJ and provide support his RFC assessment, the Commissioner submits. Given the Appeals Council's consideration, she urges the decision was based on the whole of the record and the "new" records simply were not material.

The administrative record reflects that Exhibit 15F was placed into the record by the Appeals Council. (*See* R. 5, 579–620) Together with the fact that the ALJ did not expressly identify this exhibit in his decision, Plaintiff may well be correct that the records were not considered by the ALJ—even though available to him prior to decision. However, the records were considered by the Appeals Council, which concluded that they provided no basis for changing the ALJ's decision. (R. 5). Plaintiff makes no demonstration at all that that conclusion was incorrect. As argued by the Commissioner, the telephone calls by Plaintiff reflected in this exhibit were similar to the type made in records that were considered by the ALJ. Significantly, so too were Dr. Diaz's clinical observations, which again substantially support the ALJ's decision. Plaintiff fails to demonstrate that these records demonstrate any error in the ALJ's decision or that such require a reversal or remand.

## IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I **RECOMMEND** that it be **AFFIRMED.** I further recommend that the Clerk be directed to enter Judgment in favor of Defendant and to close the case.

Respectfully submitted this
10th day of January 2018.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of record